IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WILLIAM D. WILSON, JR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 1:04cv488 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION**

A pretrial motion in limine filed by the defendant in this medical malpractice action presented the question whether the West Virginia Medical Professional Liability Act (MPLA), W. Va. Code § 55-7B-1, *et seq.*, limits the amount of damages that the plaintiff may recover from the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). Following a hearing, defendant's motion in limine was granted, the Court ruling from the bench that the MPLA is applicable in FTCA cases and thus that plaintiff's non-economic damages caused by defendant's alleged negligence are subject to the MPLA's $250,000 cap, unless plaintiff also establishes at trial that he suffered a "permanent and substantial physical deformity" as a result of defendant's alleged negligence, in which case his non-economic damages are subject to the MPLA's $500,000 cap. *See Wilson v. United States*, 1:04cv488 (E.D. Va. May 20, 2005) (Order). Recorded here are the reasons underlying that ruling.

**I.**

The record reflects that on July 26, 2001, plaintiff underwent an emergency operation at INOVA Fairfax Hospital (INOVA) involving (i) the removal of a portion of his sigmoid colon and

1

(ii) the insertion of a temporary colostomy. A pathological examination of the removed portion of plaintiff's colon on that date resulted in a diagnosis of "acute perforated diverticulitis." Following a one-week recovery period in the hospital, plaintiff was discharged from INOVA on August 3, 2001, with the understanding that he would later require additional examination and treatment for his medical condition, as well as the eventual reversal of the temporary colostomy.

Approximately one month later, on September 4, 2001, plaintiff appeared at the outpatient clinic of the Veterans' Administration Medical Center (VA Medical Center) in Martinsburg, West Virginia complaining of what he suspected was a hernia; he also sought supplies and assistance in caring for his colostomy. Plaintiff met with a surgeon on this occasion, who advised plaintiff, *inter alia*, that it would be preferable to wait three months from the date of plaintiff's original surgery at INOVA before reversing the temporary colostomy. Thereafter, on November 14, 2001, the VA Medical Center surgeon performed a second surgery on plaintiff at the VA Medical Center described as a closure of a sigmoid colostomy, or a colostomy reversal, and anastomosis.[1] He was then discharged from the VA Medical Center on November 23, 2001, following a brief recovery period.

Three days after his discharge, on November 26, 2001, plaintiff developed a fever and lower abdominal pain and was required to seek further medical care at INOVA. A physical examination and diagnostic testing performed on this date indicated that plaintiff had likely developed a leak at the point where the ends of his sigmoid colon had been rejoined in the course of the November 14, 2001 surgery. It was further determined by INOVA physicians that plaintiff was then suffering from abdominal and pelvic swelling, a post-operative fistula and an intestinal fistula. After five days of

---

[1] "Anastomosis" is the medical term in this case for reuniting the severed portions of the sigmoid colon.

hospitalization and conservative treatment, plaintiff was discharged from INOVA on November 30, 2001. At the time, his treating physician hoped that the fistula or fistulas would heal and that the proper stool path would be re-established, rendering further surgery unnecessary.

This did not occur. Plaintiff was eventually readmitted to INOVA on January 11, 2002, when his condition had not resolved after more than a month of conservative treatment. At that time, it was determined that a third surgery was necessary to treat his condition. Following some pre-operative tests, a surgeon, Dr. Howard Reines, performed a third surgical procedure on plaintiff in which most of the remaining sigmoid colon was removed and a reanastomosis performed. This surgery was successful in treating plaintiff's diverticulitis disease. Yet, plaintiff was nonetheless required to undergo a fourth surgery in October 2004 to repair a hernia that plaintiff claims developed as a proximate result of having to undergo an extra, third colon surgery.

Plaintiff filed a timely administrative claim alleging medical negligence under the FTCA on December 23, 2002, which was ultimately denied on April 15, 2004. He thereafter filed the instant FTCA action against the United States on April 29, 2004, alleging, *inter alia*, that the third and fourth surgical procedures he was required to undergo at INOVA were proximately caused by the negligence of defendant's agent in the course of the November 2001 surgery at the VA Medical Center. In his original complaint, plaintiff sought $1,550,000 in damages as a result of the alleged breach of the applicable standard of care.[2] Defendant, however, filed a motion in limine requesting

---

[2] Since the bench ruling on defendant's motion in limine, the trial has been completed and the Court has ruled as follows: (i) that defendant and its agents failed to comply with the applicable standard of care in connection with plaintiff's second surgery on November 14, 2001, (ii) that defendant's failure to meet the standard of care was the proximate cause of the third and fourth surgeries that plaintiff was required to undergo in January 2002 and in October 2004, and (iii) that plaintiff suffered $135,388 in damages as a proximate result of defendant's failure to meet the applicable standard of care, consisting of $10,388 in outstanding medical bills and

a pretrial determination that West Virginia's MPLA, W. Va. Code § 55-7B-1, *et seq.*, serves to limit the amount of non-economic damages that plaintiff is entitled to recover from the United States in the event he prevails on the liability aspect of his claim. Whether the MPLA, including specifically the damages caps that it imposes in medical malpractice actions, applies to plaintiff's claim in this instance is the question presented here.

## II.

The analysis properly begins with the express language of the FTCA, as that statute necessarily defines the extent to which the United States has waived sovereign immunity in civil suits of this nature. Indeed, it is clearly established that the federal government is generally immune from suit unless it consents to be sued. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941) (recognizing that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued") (citations omitted). In this regard, it is clear that the FTCA creates a limited waiver of sovereign immunity, expressly providing that the United States has waived immunity with respect to civil actions seeking money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[3] 28 U.S.C. § 1346(b). Yet, significantly, the United States has waived its immunity in such cases only to the extent a private person would be held liable under similar circumstances. Thus, the FTCA waiver of immunity applies only "under circumstances where the United States, if a private person, would be liable to the claimant in

---

$125,000 for pain and suffering and permanent injury (scars). *See Wilson v. United States*, 1:04cv488 (E.D. Va. June 27, 2005) (Order).

[3] It is undisputed that the VA Medical Center surgeon was acting within the scope of his federal employment in connection with plaintiff's November 2001 surgery.

4

accordance with the law of the place where the act or omission occurred." *Id*. The statute therefore allows the United States to be sued and held liable for personal injuries in tort only "in the same respect as a private person under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001); *see also Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) (recognizing that "[a] plaintiff has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances"). Given this express statutory language, the extent of defendant's liability to plaintiff in this instance is necessarily governed by West Virginia law, as the alleged negligent acts occurred at the VA Medical Center in Martinsburg, West Virginia. *See* 28 U.S.C. § 1346(b); *Dunbar Corp. v. United States*, 905 F.2d 754, 757 (4th Cir. 1991) (recognizing that the "United States liability under the FTCA depends on state law"). A significant portion of West Virginia's substantive law in this regard is set forth in the MPLA, W. Va. Code § 55-7B-1, *et seq.*, which essentially modifies certain common law principles applicable to medical malpractice actions in West Virginia by imposing strict limitations on a plaintiff's recovery of non-economic damages.

As originally enacted in 1986, the MPLA set forth a $1,000,000 cap on a plaintiff's recovery of damages in medical malpractice actions for pain, suffering, mental anguish, grief and other alleged non-economic losses. *See* W. Va. Code § 55-7B-8.[4] The MPLA was later amended in 2001, and again in 2003, which amendments were made applicable to actions filed on or after March 1, 2002, and July 1, 2003, respectively. In the 2003 amendments, in particular, the West Virginia legislature reduced the existing cap on non-economic damages to $250,000, except as set forth in a few

---

[4] It is worth noting that the MPLA's cap on non-economic damages has survived two constitutional challenges before West Virginia courts. *See Verba v. Ghaphery*, 552 S.E.2d 406 (W. Va. 2001); *Robinson v. Charleston Area Medical Center*, 414 S.E.2d 877 (W. Va. 1991).

specified exceptions, including where a plaintiff has suffered a "permanent and substantial physical deformity" as a result of a defendant's negligence, in which case a plaintiff's non-economic damages award is capped at $500,000. *Id.* Specifically, the current version of the MPLA allows a plaintiff to recover non-economic damages in excess of $250,000, but not to exceed $500,000, for certain specified injuries including, *inter alia*, (i) a permanent and substantial physical deformity, (ii) the loss of the use of a limb or loss of a bodily organ system, or (iii) a permanent physical or mental functional injury that permanently prevents the injured person from being able to perform life sustaining activities or care for himself or herself. *See* W. Va. Code § 55-7B-8(b).[5]

Although several district courts in West Virginia have applied various MPLA provisions in the FTCA context,[6] the Fourth Circuit has not squarely addressed whether the MPLA, including its accompanying limitation on damages, applies to FTCA claims brought against federal health care providers in West Virginia. In an analogous case, however, the Fourth Circuit has held that the cap on non-economic damages set forth in the Virginia Medical Malpractice Act applies in an FTCA case governed by Virginia law. Specifically, in *Starns v. United States*, 923 F.2d 34 (4th Cir. 1991), the Fourth Circuit concluded that "[s]ince private health care providers in Virginia would in 'like circumstances' be entitled to the benefit of [the damages limitation set forth in the Virginia Code],

---

[5] Whether any of these exceptions apply in the instant case, particularly the permanent and substantial physical deformity exception, is a question to be determined at trial following the presentation of testimony and evidence.

[6] *See, e.g., Stanley v. United States*, 321 F. Supp. 2d 805 (N.D. W. Va. 2004) (holding that the notice of claim and certificate of merit provisions of the MPLA apply in an FTCA case); *Osborne v. United States*, 166 F. Supp. 2d 479 (S.D. W. Va. 2001) (applying $1,000,000 limitation on damages for non-economic losses from prior version of MPLA in FTCA case); *Bellomy v. United States*, 888 F. Supp. 760 (S.D. W. Va. 1995) (applying the elements of proof set forth in the MPLA in an FTCA action).

so, too, is a federally operated hospital in that state." *Id.* at 37. For the same reason, it is apparent that the VA Medical Center, as a federally operated medical facility located in the state of West Virginia, is entitled to the benefits and limitations codified in the MPLA. This conclusion is likewise consistent with similar rulings in other circuits.[7]

This result is not altered by the fact that the VA Medical Center is not licensed by the state of West Virginia, as otherwise required for a West Virginia health care facility to be governed by the MPLA. *See* W. Va. Code § 55-7B-2 (defining "health care facility" as "any clinic, [or] hospital...in and licensed by the state of West Virginia and any state operated institution or clinic providing health care"). Indeed, plaintiff's unpersuasive argument to the contrary overlooks the fact that the origin of the government's liability in this instance, and indeed in all medical malpractice actions filed by a claimant against the United States, is found in the FTCA, not the MPLA. And, significantly, the Fourth Circuit has made clear that while state law "informs us on how a private party would be treated, it is incapable of telling us to what extent the federal government has waived its sovereign immunity." *Starns*, 923 F.2d at 37.

Nor is there any merit to plaintiff's argument that the 2003 amendments to the MPLA, including those reducing the non-economic damages cap from $1,000,000 to $250,000, are unconstitutionally retroactive as applied to this particular case, where the alleged negligence

---

[7] *See, e.g., Lozano v. United States*, 974 F.2d 986 (8th Cir. 1992) (applying Nebraska medical malpractice cap to an FTCA case); *Owen v. United States*, 935 F.2d 734 (5th Cir. 1991) (holding Louisiana medical malpractice cap applies to the United States in an FTCA case); *see also Reilly v. United States*, 863 F.2d 149, 162 (1st Cir. 1988) (holding that the Rhode Island limitations statute applies to the United States); *Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir. 1987) (holding that the California limitations statute applies to the United States); *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (holding that the Texas limitations statute applies to the United States); *Scheib v. Florida Sanitarium & Benev. Ass'n.*, 759 F.2d 859, 863-64 (11th Cir. 1985) (holding that Florida's collateral source statute applies to the United States).

occurred in 2001. To be sure, plaintiff is correct that "[a]bsent plain legislative intent, statutes will not be applied retroactivity to create new duties and obligations or to disturb vested rights." *Farish for Farish v. Courion Industries, Inc.*, 754 F.2d 1111, 1115 (4th Cir. 1985). Here, however, the 2003 MPLA amendments added the clear, unambiguous provision that "[t]he amendments to this article...apply to all causes of action alleging medical professional liability which are filed on or after the first day of July, two thousand three." W. Va. Code § 55-7B-10(b); *see also State ex rel. Miller v. Hon. Stone*, 607 S.E.2d 485, 487 (2004) (recognizing that the 2003 amendments to the Medical Professional Liability Act became applicable to all medical malpractice actions filed on or after July 1, 2003). And where, as here, "a statute is clear and unambiguous and the legislative intent is plain,... it is the duty of the courts not to construe but to apply the statute." *Miller*, 607 S.E.2d at 489 (quoting *State v. General Daniel Morgan Post No. 548, V.F.W.*, 107 SE 2d 353 (1959)). It follows from this that the amended MPLA, by its plain terms, applies to this case even though plaintiff's November 2001 surgery occurred prior to July 1, 2003, the stated effective date of the MPLA amendments. This is so because plaintiff instituted this action in April 2004, well after the applicable effective date of the amended MPLA.

Nor does this result give rise to a claim of unconstitutional retroactivity, for it is well-settled that a legislative limitation on a common law measure of recovery, such as that imposed in the MPLA, does not violate a fundamental constitutional right or create a suspect classification for constitutional purposes. Rather, such a limitation is "a classic example of an economic regulation – a legislative effort to structure and accommodate 'the burdens and benefits of economic life.'" *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 83 (1978) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976)). And, it is well-recognized that

8

"Congress has an unquestioned right to make economic legislation retroactive, provided that this does not require the revision of a judgment that has become final." *Baker v. GTE North Inc.*, 110 F.3d 28, 30 (7th Cir. 1997) (citations omitted). It is also clear that Congress and state legislatures may, consistent with the Constitution, enact retroactive legislation provided they can establish a rational basis for doing so. *See General Motors Corp. v. Ramman*, 503 U.S. 181, 191 (1992). Here, the West Virginia legislature, in enacting both the original and amended damages limitations set forth in the MPLA, had a rational basis for balancing (i) the need for fair compensation for patients injured by medical negligence with (ii) the ability of health care providers and their insurance carriers to afford such compensation. *See* W. Va. Code § 55-7B-1 (legislative findings and declaration of purpose). Moreover, as of the effective date of the 2003 amendments — July 1, 2003 — plaintiff had not yet filed the instant action against the defendant, let alone obtained a final judgment that could potentially raise a constitutional retroactivity concern.

The foregoing principles compel the conclusion that the instant action, not filed by plaintiff until April 29, 2004, unquestionably falls within the purview of the 2003 MPLA amendments, including specifically the caps that it imposes on the recovery of damages for non-economic losses in medical malpractice actions. *See Miller*, 607 S.E.2d at 490-91 (concluding that it was not error to apply the MPLA's amended damages limitations to a claim which could not properly be filed until July 20, 2003, after the 2003 amendments took effect). Plaintiff's recovery of non-economic damages from the defendant, in the event he prevails on the question of liability, will therefore be limited to $250,000, unless he is also able to establish that he meets one of the MPLA's specified exceptions warranting a maximum of $500,000 in non-economic damages. That issue remains for

resolution at trial.[8]

An appropriate Order has issued.

/s/
_____

Alexandria, Virginia  T. S. Ellis, III
June 27, 2005  United States District Judge

---

[8] In the end, it was unnecessary to reach this issue because the damages awarded fell well below the applicable MPLA caps. *See supra*, n.2.